**ESTATE OF Mildred Foster, By Its Executor, William A. FOSTER; William A. Foster; John T. Foster; Janice M. Kelly; James M. Foster; and Dale R. Foster, Plaintiffs,**

v.

**Donna E. SHALALA, Secretary of the United States Department of Health and Human Services, Defendant.**

No. C 95–3014–MWB.

United States District Court,
N.D. Iowa,
Central Division.

May 31, 1996.

Richard H. Doyle of Michael J. Galligan Law Firm, Des Moines, Iowa, for plaintiffs.

Michael R. Fry, Assistant Regional Counsel, Region VII, Department of Health and Human Services, and Donna K. Webb, Assistant United States Attorney, Sioux City, for defendant.

AMENDED MEMORANDUM OPINION AND ORDER REGARDING PLAINTIFFS' COMPLAINT FOR DECLARATORY JUDGMENT AND RULING ON MOTION TO RECONSIDER

## TABLE OF CONTENTS

I. INTRODUCTION .................................................... 853
 A. Procedural Background ......................................... 853
 B. Findings Of Fact ............................................. 854
 C. Arguments Of The Parties ..................................... 855

II. LEGAL ANALYSIS ................................................. 858
 A. Standards For Declaratory Judgments .......................... 858
 B. The Legal Basis For Declaration Of Rights .................... 860
 1. Preemption .............................................. 860
 2. Whose property is the settlement? ....................... 863

III. CONCLUSION .................................................... 866

BENNETT, District Judge.

The present declaratory judgment action confronts the court with a statutory maelstrom as the court examines the question of whether Medicare is entitled to be reimbursed for medical expenses it paid out of a settlement in a medical malpractice case. The circle created by the statutes in question runs as follows: under a federal statute, Medicare is entitled to reimbursement of conditional payments for medical expenses made under a reasonable expectation that the medical malpractice liability insurer would ultimately pay those expenses; however, an Iowa statute precludes such an expectation, because it prohibits any recovery against the liability insurer for losses for medical expenses replaced by an insurer or government plan; however, Medicare only replaced the losses, because of its reasonable expectation that the liability insurer would pay them, so Medicare is entitled to reimbursement of its conditional payments; and so the cycle starts again. One way to avoid this Charybdis is to confront the Scylla of federal preemption of state law,[1] which would

seem to suggest that Medicare is entitled to reimbursement from the settlement, which Medicare asserts could have encompassed medical expenses, even though the plaintiffs assert that the settlement encompasses only loss of consortium claims of the Medicare beneficiary's children. The court believes that it can chart a course between these hazards that leads to a just and equitable declaration of the rights of the parties.

This ruling, however, is the court's second attempt to chart such a course. The court filed a previous opinion in this matter, granting declaratory judgment in plaintiffs' favor. *See Foster v. Shalala,* 1996 WL 203062 (N.D.Iowa April 24, 1996) (Withdrawn). However, plaintiffs moved to reconsider that ruling, and were joined in one of their criticisms by the defendant. Upon the review of the April 24, 1996, ruling prompted by plaintiffs' motion to reconsider, the court finds that this declaratory judgment action could be more narrowly decided. Therefore the prior opinion is hereby withdrawn.

In these circumstances, the court finds the comments of Judge Edwards of the District

---

1. In *The Odyssey,* Homer described Scylla as a female monster with six heads who, from her perch on a rock atop the eastern side of the straits of Messina, would swoop down to seize a half-dozen sailors from any ship trying to avoid the whirlpool of Charybdis on the western side of the straits. *See, e.g., Funk and Wagnalls Standard Dictionary of Folklore, Mythology, and Legend* 213 (Maria Leach, ed., Funk & Wagnalls, 1972); Thomas Bullfinch, *Bullfinch's Mythology* 59–61 (Crowell, 1834). The goddess Circe advised Odysseus as follows: "Ah, shun the horrid gulf! By Scylla fly! 'Tis better six to lose, than all to die!" *The Odyssey,* Book XII, lines 137–38. Thus, the allusion refers to a situation where a person faces two equally perilous alternatives, neither of which can be passed without encountering, and probably falling victim to, the other.

of Columbia Circuit Court of Appeals particularly appropriate:

I often have been struck by Justice Stewart's concurring statement in *Boys Markets, Inc. v. Retail Clerks Union, Local 770*, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970), a case in which the Court reconsidered and overruled an earlier decision. Justice Stewart remarked that, "[i]n these circumstances the temptation is strong to embark upon a lengthy personal *apologia.*" *Id.* at 255, 90 S.Ct. at 1595. This remark has special poignancy for me now, because it underscores the distress felt by a judge who, in grappling with a very difficult legal issue, concludes that he has made a mistake of judgment. Once discovered, confessing error is relatively easy. What is difficult is accepting the realization that, despite your best efforts, you may still fall prey to an error of judgment. Like Justice Stewart, I will take refuge in an aphorism of Justice Frankfurter:

Wisdom too often never comes, and so one ought not to reject it merely because it comes late.

*Henslee v. Union Planters Nat. Bank & Trust Co.*, 335 U.S. 595, 600, 69 S.Ct. at 290, 293, 93 L.Ed. 259 (1949) (Frankfurter, J., dissenting).

*Moldea v. New York Times Co.*, 22 F.3d 310, 311 (D.C.Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 202, 130 L.Ed.2d 133 (1994). The present ruling, the court believes, is a more properly tailored resolution of the declaratory judgment action, even if it was late in coming.

## I. INTRODUCTION

The estate of Mildred Foster, by its executor, William A. Foster, as well as Mildred Foster's five children, William A. Foster, John T. Foster, Janice M. Kelly, James M. Foster, and Dale R. Foster (collectively, "the Fosters"), have brought the present declaratory judgment action pursuant to 28 U.S.C. § 2201(a). The defendant is Donna E. Shalala, as Secretary of the United States Department of Health and Human Services, but, because the issue is whether the United States is entitled to reimbursement of Medi-care benefits paid, the defendant will be referred to hereinafter as "Medicare." The complaint seeks a declaration that Medicare has no right or interest in proceeds of a tentative settlement of an underlying medical malpractice action in state court brought by the Fosters against certain medical providers following Mildred Foster's death in 1991. The court's disposition of this matter begins with the procedural and factual background to the parties' legal dispute.

### A. Procedural Background

The complaint for declaratory judgment in this action was filed on January 11, 1995, in the United States District Court for the Southern District of Iowa, Central Division. However, by order of United States District Judge Harold D. Vietor, dated February 1, 1995, the case was transferred to this district. The complaint for declaratory judgment alleges that Medicare paid a substantial portion of the medical expenses incurred by Mildred Foster prior to her death and following allegedly negligent medical treatment that gave rise to the state court action. It further alleges that the tentative settlement of the state court malpractice action is conditioned on a determination that Medicare is not entitled to reimbursement from the settlement of any expenses it paid for Mildred Foster. The complaint therefore asks the court to declare and adjudge that Medicare is not entitled to any of the proceeds of the tentative settlement of the medical malpractice lawsuit in state court. The state court proceedings have been continued pending this court's disposition of the declaratory judgment action. Medicare filed its answer to the complaint for declaratory judgment on March 22, 1995, denying that the Fosters are entitled to the declaratory relief they seek.

A briefing schedule was established by the Clerk of Court on March 22, 1995, with which the parties have complied. The Fosters filed their Brief and Argument on April 21, 1995. Medicare's brief was filed on June 13, 1995, and the Fosters' reply brief followed on June 29, 1995. A number of circumstances prevented the court from hearing this matter until April 19, 1996.

The parties appeared telephonically through counsel at the hearing on April 19, 1996. The plaintiffs were represented by Richard H. Doyle of the Michael J. Galligan Law Firm in Des Moines, Iowa. The defendant was represented by Michael R. Fry, Assistant Regional Counsel, Region VII, Department of Health and Human Services, and Donna K. Webb, Assistant United States Attorney, of Sioux City. The court found the briefs of both parties, as well as their oral presentations, to be of unusually good quality and assistance.

The court originally ruled on the request for declaratory judgment on April 24, 1996. *See Foster v. Shalala,* 1996 WL 203062 (N.D.Iowa April 24, 1996) (Withdrawn). On May 6, 1996, the last day to do so, the Fosters filed a motion denominated "Plaintiffs' Motion to Reconsider," identified as made pursuant to *Fed.R.Civ.P.* 59(e), challenging conclusions in that ruling. Although the motion cites no standards for a motion to reconsider,[2] cites no authority contrary to that relied upon by the court, and is not accompanied by any brief, it nonetheless asserts that the court's ruling has "inequitable" results the Fosters assert surely were not intended by the court. On May 16, 1996, Medicare filed a response to the Fosters' motion to reconsider in which Medicare joined in one of the Fosters' criticisms. The court finds that its prior ruling must be withdrawn, but not on the grounds urged by the parties. Instead, the court concludes that its prior ruling may properly be reconsidered and amended pursuant to *Fed. R.Civ.P.* 59(e) to decide this declaratory judgment action more narrowly. The prior ruling is hereby withdrawn, and the present amended ruling starts from scratch, addressing only those legal questions that must be resolved to declare the rights of the parties in the circumstances presented.

The following findings of fact place the arguments of the parties made at the hearing and in their briefs in the necessary context.

## B. Findings Of Fact

On April 23, 1991, Mildred Foster underwent a laparoscopic cholecystectomy, a form of gall bladder surgery, at the North Iowa Medical Center. She was eventually transferred to the Mayo Clinic/St. Mary's Hospital in Rochester, Minnesota, where she was treated until her death on May 22, 1991. The state court petition alleges that Mildred Foster died of peritonitis, sepsis, ischemic bowel, and other complications as the result of perforation of her upper small intestine during her gall bladder surgery. During her treatment, Mildred Foster incurred medical expenses of $155,969.21, of which $64,493.46 was paid by Medicare.

---

**2.** Federal Rule of Civil Procedure 59(e) provides as follows:

> **(e) Motion to Alter or Amend a Judgment.** A motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment.

*Fed.R.Civ.P.* 59(e). Thus, *Fed.R.Civ.P.* 59(e) empowers a district court to alter or amend original judgments. *Fed.R.Civ.P.* 59(e). "Although the words 'alter or amend' imply something less than 'set aside,' a court may use Rule 59(e) to set aside the entire judgment." *Sanders v. Clemco Indus.,* 862 F.2d 161, 168 n. 13 (8th Cir.1988) (citing *A.D. Weiss Lithograph Co. v. Illinois Adhesive Prods. Co.,* 705 F.2d 249, 250 (7th Cir.1983); 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2817, at 111 n. 31 (1973)).

Although the rule identifies the time within which such a motion must be filed, it does not otherwise establish the criteria by which the court is to assess the merits of the motion. However, the Eighth Circuit Court of Appeals quoted with approval the Seventh Circuit Court of Appeals' statement that the " 'limited function' " of a motion for reconsideration is " 'to correct manifest errors of law or fact or to present newly discovered evidence.' " *Hagerman v. Yukon Energy Corp.,* 839 F.2d 407, 414 (8th Cir.) (quoting *Rothwell Cotton Co. v. Rosenthal & Co.,* 827 F.2d 246, 251 (7th Cir.), *as amended,* 835 F.2d 710 (7th Cir.1987), quoting in turn *Keene Corp. v. International Fidelity Ins. Co.,* 561 F.Supp. 656, 665–66 (N.D.Ill.1983), *aff'd,* 736 F.2d 388 (7th Cir.1984)), *cert. denied,* 488 U.S. 820, 109 S.Ct. 63, 102 L.Ed.2d 40 (1988); *see also Committee for the First Amendment v. Campbell,* 962 F.2d 1517, 1523 (10th Cir.1992) (purpose of a motion to alter or amend a judgment under Rule 59(e) "is to correct manifest errors of law or to present newly discovered evidence."). Therefore, a party moving to alter or amend a judgment pursuant to Rule 59(e) " 'must clearly establish either a manifest error of law or fact or must present newly discovered evidence.' " *LB Credit Corp. v. Resolution Trust Corp.,* 49 F.3d 1263, 1267 (7th Cir. 1995) (quoting *Federal Deposit Ins. Corp. v. Meyer,* 781 F.2d 1260, 1268 (7th Cir.1986)).

In the underlying state court action in Iowa District Court for Cerro Gordo County against two medical doctors and a medical clinic, the Fosters allege medical negligence in surgery on and subsequent care of Mildred Foster. The petition in state court seeks from the defendants "an amount as will fully and fairly compensate [Mildred Foster's estate] and the children of Mildred Foster of all damages alleged...." The damages identified include expenses incurred by the estate for medical services, as well as expenses for Mildred Foster's funeral and burial, and damages for loss of consortium suffered by Mildred Foster's five children.

The Fosters and the alleged tortfeasors in the state court action have reached a tentative settlement of the Fosters' claims, subject to the present resolution of any claims Medicare may have against that settlement. The settlement is entirely for the children's loss of consortium claims, because the Fosters are prohibited under Iowa law from obtaining a recovery for any medical expenses paid by Medicare or other medical insurance.[3] See Iowa Code § 147.136. The underlying state court action has been continued pending resolution of the question presently before the court in this declaratory judgment action. Although counsel for the Fosters sought to obtain an informal settlement of the question of whether Medicare had any right or interest in the tentative settlement of the malpractice action by sending letters to regional Medicare officials, no response to counsel's inquiries was forthcoming. The Fosters therefore filed the present declaratory judgment action to expedite resolution of the state court action and to forestall any further litigation between the Fosters and Medicare.

### C. Arguments Of The Parties

As framed by the briefs, this action seeks declaration of the parties' rights principally as the result of the confusing interplay of two statutes, one state, and one federal. Although the oral arguments of both parties suggested that the parties' rights could be determined without addressing whether the federal statute preempted the state statute, both statutes were nonetheless relevant to the proper adjudication of the parties' rights. The state statute is Iowa Code § 147.136, which purports to preclude a recovery in a medical malpractice case for "actual economic losses incurred or to be incurred in the future by the claimant by reason of the personal injury ... to the extent that those losses are replaced or are indemnified by insurance, or by governmental ... programs...." Iowa Code § 147.136. The federal statute is the so-called "Medicare Secondary Payer" statute ("MSP"), 42 U.S.C. § 1395y(b)(2),[4] which provides that Medicare shall be the "secondary" payer of medical expenses when another source of benefits is available, but may make payments of medical expenses conditioned upon reimbursement from a "primary" payer where there is a reasonable expectation that the primary payer will ultimately pay the expenses. 42 U.S.C. § 1395y(b)(2)(A) & (B)(i)–(ii). The federal statute further grants Medicare a subrogation right to the extent of the conditional payment it makes. 42 U.S.C. § 1395y(b)(2)(B)(iii). If the federal statute is effective despite the state statute, Medicare is or may be entitled to reimbursement out of the tentative settlement in the state court action. However, if the state statute is effective, the Fosters argue, there is no part of the proceeds of the tentative settlement in which Medicare could have an interest, because Medicare could not have expected the medical malpractice liability insurer to pay the benefits Medicare paid, and therefore

---

3. Although at oral arguments, Medicare suggested that the claim is unapportioned and will release all claims, including those of the estate, no party has submitted a copy of the tentative settlement agreement. Medicare suggested that a settlement could be structured to avoid Medicare's right to reimbursement, but did not allege that that had been the case here nor offer any evidence in support of such a proposition.

4. Amendments codified at § 1395y(b) are "referred to as the 'Medicare Secondary Payer' ("MSP") statute." Health Ins. Ass'n of Am., Inc. v. Shalala, 23 F.3d 412, 414 (D.C.Cir.1994), cert. denied, — U.S. —, 115 S.Ct. 1095, 130 L.Ed.2d 1064 (1995); Evanston Hosp. v. Hauck, 1 F.3d 540, 544 (7th Cir.1993) (42 U.S.C. § 1395y(b)(2) "is known as the Medicare Secondary Payer provision."), cert. denied, — U.S. —, 114 S.Ct. 921, 127 L.Ed.2d 215 (1994).

Medicare's payment was not "conditional," but primary.

The Fosters argue that Iowa law prevented them from seeking to recover from the medical malpractice defendants any amount for medical expenses paid either by Mildred Foster's health insurance carrier or by Medicare. Consequently, they argue that the entire settlement contemplated in the state lawsuit is for the children's loss of parental consortium. They further argue that any recovery for loss of consortium is not the property of the estate, but property only of the surviving children, although Iowa law requires consortium claims to be brought by the decedent's estate. *See* Iowa Code §§ 613.15, 633.336. The Fosters contend that, because Iowa Code § 147.136 prohibits a recovery in a medical malpractice case for medical expenses covered by insurance or a governmental program, such as Medicare, there is no "primary plan" to which Medicare's obligation to pay Mildred's medical expenses would be "secondary." Thus, they argue, "If the individual's right to payment under the primary plan is limited by the terms of the plan or by operation of state law, the government's subrogated claim is equally limited," citing *Waters v. Farmers Texas County Mut. Ins. Co.*, 9 F.3d 397, 400 (5th Cir.1993).

The Fosters further contend that Iowa Code § 147.136 is not preempted by the MSP statute, 42 U.S.C. § 1395y(b). They argue that the two statutes can exist "harmoniously," because the purpose of the Iowa statute, to reduce the size of malpractice verdicts thereby making malpractice insurance less expensive and assuring continuing health care services, does not harm the congressional objective of the MSP, which is to prevent other insurers from assuming a secondary status, while placing Medicare in the position of a primary payer. Finally, the Fosters argue that there would be no suit in state court but for their consortium claims, and that passing these claims through the estate does not entitle Medicare to any portion of a settlement of those claims. To allow Medicare to obtain an interest in the funds paid in settlement of the loss of consortium claims, the Fosters argue, would be to allow an unconstitutional taking of the property of Mildred Foster's children.

At oral arguments, the principal thrust of the Fosters' argument was that the settlement in question is only for the children's loss of consortium claim, so that the court need never reach the issue of whether the state statute is preempted. The Fosters argued that, because the loss of consortium is not a claim recoverable by the Medicare beneficiary, the Iowa statute never comes into play, nor does Medicare have any interest in the settlement of the consortium claims. The Fosters reiterated that only a quirk of Iowa law requires that loss of parental consortium claims be brought through the decedent's estate, but that even Iowa law recognizes that the claim is the property of the children, not the estate.

Medicare's first argument is also that Iowa Code § 147.136 simply does not apply, but for different reasons. Medicare contends that, because its payments were "conditional," as based on a reasonable expectation that a liability insurance policy or plan would pay them, with reimbursement to Medicare, 42 U.S.C. § 1395y(b)(2)(A) & (B)(i), the losses covered by the conditional Medicare payments were not "replaced or indemnified" by Medicare within the meaning of the Iowa statute. Therefore, Iowa Code § 147.136 does not preclude an award of those expenses against the medical malpractice defendants. However, when pressed during oral arguments, Medicare could not identify any kind of payment by the injured party's insurer that would be made without a right of subrogation or indemnification. Thus, Medicare was unable to identify any payments that would be "replacements" if its exception, based on "conditional" payments, were applicable.

For its next argument, Medicare points out that the state court petition sought the medical expenses the Fosters now claim they could not recover and the settlement in question is unapportioned, so that the Fosters' claims included Medicare's conditional payments. Medicare argues that it is the existence of a liability insurance policy that could reasonably be expected to pay the medical expenses, not whether the settlement in

question is tied to payments for medical expenses, that determines whether Medicare has an interest in the settlement proceeds.

Medicare distinguishes the *Waters* decision on which the Fosters rely on the ground that the question in *Waters* was whether Medicare could recover up to the limits of the primary insurance policy when the Medicare beneficiary was only one of several injured persons with a right to recover against the policy. Medicare asserts that all *Waters* decided was that until it was determined what share of the policy limits belonged to the Medicare beneficiary, the courts could not determine the limits of Medicare's right of reimbursement from the beneficiary's recovery. According to Medicare, the *Waters* decision still stands for the proposition that Medicare's claim is superior to the beneficiary's claim or the claim of anyone claiming through the beneficiary.

Medicare also argues that, even if Iowa Code § 147.136 might otherwise apply, it is preempted by federal law in the form of the MSP statute. Medicare argues that the Iowa statute cannot co-exist "harmoniously" with the superior federal law, because the state law has the effect of placing Medicare as the primary payer here, exactly contrary to the goal of the federal statute. Therefore, Medicare argues that the preempted state law cannot place Medicare in the position of "primary payer" of the portion of Mildred Foster's medical expenses that should be paid by the medical providers' liability insurance. Instead, such expenses are still recoverable against the medical providers' liability insurance in the absence of the preempted state law.

For its final argument in its brief, Medicare asserted that because its right of recovery is against the medical expenses it could reasonably expect the liability insurer to pay, it is not seeking a recovery against or out of the children's recoveries for loss of consortium. Instead, any recovery by the Fosters against the medical malpractice defendants includes, by preemption of the state law by superior federal law, a recovery for medical expenses only conditionally paid by Medicare. Thus, Medicare argues, there is no unconstitutional taking of anything belonging to the children.

At oral arguments, Medicare acknowledged that it would not have to seek recovery against the Fosters' settlement of the loss of consortium claims, because Medicare also has a direct cause of action under the MSP statute against the tortfeasors' liability insurer. Medicare asserted, however, that direct actions are rarely used, although it offered no explanation as to why this should be so. Furthermore, Medicare reiterated its argument that nothing, not even the Iowa statute, prevented the Fosters from seeking damages for medical expenses in this case, because Medicare only conditionally paid, but did not "replace," those losses. Thus, Medicare contends, it need not bring a separate action when it could seek reimbursement from the Fosters' recovery against the tortfeasors' liability insurer, albeit a recovery reduced under applicable regulations by Medicare's share of the procurement costs in obtaining the Fosters' settlement or judgment against the liability insurer.

The Fosters' reply brief plainly establishes where the Fosters believe the circle of statutes begins. The Fosters reassert that because of the Iowa statute, there can be no recovery for medical expenses, and hence Medicare could have no reasonable expectation that those expenses would be paid by the medical malpractice defendants' liability insurance. Hence, they argue that Medicare did not make "conditional" payments on which it is entitled to reimbursement, but was in fact the primary payer in the absence of any other liable party. The Fosters return to their argument that a recovery by Medicare against the proceeds offered in settlement for their loss of consortium claims would be a "taking," because Medicare has no superior claim against those proceeds. The Fosters reiterate that the tentative settlement is only for their loss of consortium claims, not for any medical expenses conditionally paid by Medicare. Thus, they contend, Medicare is seeking to recover from funds to which it is not entitled.

The court recognized that some time had passed since the parties filed their briefs in this matter. Just prior to the hearing in this

matter, the court discovered a recent decision of the First Circuit Court of Appeals dealing with preemption of state law by the MSP, *United States v. Rhode Island Insurers' Insolvency Fund*, 80 F.3d 616 (1st Cir. 1996), which the court believed might have some bearing on the disposition of the present litigation. By order dated April 16, 1996, the court advised the parties of this decision and directed that they address what effect the decision has on the present controversy.[5] What import, if any, the decision in *Rhode Island Insurers' Insolvency Fund* has for this case will be discussed below.

The court must now turn to a legal analysis of the question presented here to determine whether there is a course past the Charybdis of a statutory circle, and, better yet, one that also avoids the Scylla of preemption.

## II. LEGAL ANALYSIS

### A. Standards For Declaratory Judgments

■■ The present action is one for declaratory judgment. Congress has provided for declaratory judgments by the federal courts through two provisions of the Declaratory Judgment Act, which state, in pertinent part, the following:

**§ 2201. Creation of remedy**

(a) In a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

\* \* \* \* \* \*

**§ 2202. Further relief**

Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment.

28 U.S.C. §§ 2201(a), 2202. " 'The essential distinction between a declaratory judgment action and an action seeking other relief is that in the former no actual wrong need have been committed or loss have occurred in order to sustain the action.' " *Horne v. Firemen's Retirement Sys. of St. Louis*, 69 F.3d 233, 236 (8th Cir.1995) (quoting *United States v. Fisher–Otis Co.*, 496 F.2d 1146, 1151 (10th Cir.1974)). However, "[t]he case or controversy requirement of Article III applies with equal force to actions for declaratory judgment as it does to actions seeking traditional ... relief." *Marine Equip. Management Co. v. United States*, 4 F.3d 643, 646. (8th Cir.1993) (citing *Foster v. Center Township of La Porte County*, 798 F.2d 237, 242 (7th Cir.1986)).

■■ The test recognized by the Eighth Circuit Court of Appeals as applicable to the question of whether there is an actual case or controversy for an action under the Declaratory Judgment Act is "whether 'there is a substantial controversy between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.' " *Id.* (quoting *Caldwell v. Gurley Refining Co.*, 755 F.2d 645 (8th Cir.1985), in turn citing *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826 (1941)); *see also Lake Carriers' Ass'n v. MacMullan*, 406 U.S. 498, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972) (same test). Because "substantial controversy" is "imprecise," the Eighth Circuit Court of Appeals has clarified that the decision of whether such a controversy exists is to be made upon the facts on a case-by-case basis. *Id.* (citing *Golden v. Zwickler*, 394 U.S. 103, 108, 89 S.Ct. 956, 959–60, 22 L.Ed.2d 113 (1969)). In order to be "substantial," the controversy "must be

---

**5.** When asked why Medicare had not supplemented its brief by citing this case, which involved another counsel for another regional DHHS office, counsel for the DHHS in this case stated that he received a copy of the decision from the court the day before he received another copy through internal DHHS sources. The court was pleased to discover that, big as government is, and the DHHS in particular, one hand of the government had not been ignorant of what the other hand was doing in this case, even if the intra-governmental communication had been somewhat tardy.

live throughout the course of the litigation and must exist at the time of the district court's hearing of the matter and not simply when the case is filed." *Id.*

■ Here, the court finds that the three requirements for prosecution of the present declaratory judgment action have been met. The controversy, involving whether Medicare can seek reimbursement from the tentative settlement achieved by the Fosters in the state court action, is "live," and therefore "substantial." *Id.* Until the controversy is resolved, the state court action cannot proceed to closure, because the proposed settlement is conditioned upon the Fosters obtaining a favorable resolution of this action. The parties to this declaratory judgment action, the Fosters and Medicare, are "adverse," in that they seek diametrically opposed answers to the question upon which this court's declaration is sought, and the benefits of the decision will flow to one party or the other depending upon this court's conclusions. *Id.* Finally, there is "sufficient immediacy and reality" about the controversy to warrant relief, *id.,* because there is no indication that Medicare intends to waive its right to seek reimbursement or otherwise offer no impediment to settlement of the medical malpractice action. Thus, the Fosters do face the specter of comparable questions being raised in a subsequent action by Medicare for reimbursement or through Medicare's intervention in the state court action to assert a claim to part of the settlement proceeds under 42 U.S.C. § 1395y(b)(2)(B)(ii).

■ The Declaratory Judgment Act confers "'unique and substantial discretion'" upon federal courts, including discretion whether to entertain, stay, or dismiss the action. *Id.* (quoting *Wilton v. Seven Falls Co.,* —— U.S. ——, —— - ——, 115 S.Ct. 2137, 2139 & 2144, 132 L.Ed.2d 214 (1995)); *International Ass'n of Entrepreneurs of Am. v. Angoff,* 58 F.3d 1266, 1270 (8th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 774, 133

L.Ed.2d 726 (1996); *BASF Corp. v. Symington,* 50 F.3d 555, 557 (8th Cir.1995); *Employers Ins. of Wausau v. Missouri Elec. Works, Inc.,* 23 F.3d 1372, 1374 (8th Cir.1994) (noting that "[a] district court is not obligated to exercise jurisdiction in a diversity case brought under the Declaratory Judgment Act," citing *Brillhart v. Excess Ins. Co.,* 316 U.S. 491, 494, 62 S.Ct. 1173, 1175, 86 L.Ed. 1620 (1942), and discussing grounds for abstaining from considering such an action).[6] For example,

> the Declaratory Judgment Act is not to be used either for tactical advantage by litigants or to open a new portal of entry to federal court for suits that are essentially defensive or reactive to state actions. *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 18 n. 20, 103 S.Ct. 927, 937, 74 L.Ed.2d 765 (1983); *BASF [Corp. v. Symington],* 50 F.3d [555,] 558 [ (8th Cir.1995) ] (citing cases); *Continental Cas. Co. v. Robsac Indus.,* 947 F.2d 1367, 1372–73 (9th Cir.1991); *Omaha Property [and Cas. Ins. Co. v. Johnson],* 923 F.2d [446,] 448 [ (6th Cir.1991) ]; *Continental Airlines [v. Goodyear Tire & Rubber Co.],* 819 F.2d [1519,] 1524 [ (9th Cir.1987) ]; *Transamerica [Occidental Life Ins. Co. v. DiGregorio],* 811 F.2d [1249,] 1253 [ (9th Cir.1987) ]; *Home Fed. Sav. and Loan Ass'n v. Ins. Dept. of Iowa,* 571 F.2d 423, 427 (8th Cir.1978)....

More specifically, the Declaratory Judgment Act is not to be used to bring to the federal courts an affirmative defense which can be asserted in a pending state action. *Franchise Tax Bd. [of Calif. v. Constr. Laborers Vacation Trust for S. Calif.],* 463 U.S. [1,] 16, 103 S.Ct. [2841] at 2849–50 [77 L.Ed.2d 420 (1983) ] (discussing *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950)); *BASF,* 50 F.3d at 558. In addition, the Declaratory Judgment Act is not meant to expand federal jurisdiction. *Franchise*

---

[6]. No party has suggested that this court should abstain from hearing this action, so the court will not discuss here the various grounds for abstention from a declaratory judgment action. Suffice it to say that, although the court's decision to exercise jurisdiction is discretionary, that "does not mean that the decision to abstain can be made 'as a matter of whim or personal disinclination.'" *United States Fidelity and Guaranty Co. v. Murphy Oil USA, Inc.,* 21 F.3d 259, 261 (8th Cir.1994) (quoting *Public Affairs Assocs., Inc. v. Rickover,* 369 U.S. 111, 112, 82 S.Ct. 580, 581–82, 7 L.Ed.2d 604 (1962) *(per curiam)*).

*Tax Bd.,* 463 U.S. at 15–16, 103 S.Ct. at 2849–50; *Home Federal,* 571 F.2d at 427 n. 17.

*Angoff,* 58 F.3d at 1270. The court finds none of these misuses of the Declaratory Judgment Act here, but instead a legitimate action, as the Act provides, "to declare the rights and other legal relations of any interested party." 28 U.S.C. § 2201(a). Furthermore, although a declaratory judgment action should not be used to decide affirmative defenses that can be asserted in a pending state action, federal courts "regularly consider the merits of affirmative defenses raised by declaratory plaintiffs." *BASF Corp.,* 50 F.3d at 558 (citing, *inter alia, Kelly v. Robinson,* 479 U.S. 36, 40, 107 S.Ct. 353, 355–56, 93 L.Ed.2d 216 (1986)). Here, the Fosters' declaratory judgment action might be construed as raising an affirmative defense, the Iowa statute, to any subsequent claim Medicare might make against them for reimbursement of medical expenses Medicare has paid. However, this affirmative defense is not to claims of the parties in the present state action, but to a subsequent action involving Medicare as the claimant. Thus, the Fosters' declaratory judgment action is proper.

■ Finding that the declaratory judgment action is properly before the court, the court now turns to consideration of whether the Fosters are entitled to the declaratory relief they seek.[7]

## B. The Legal Basis For Declaration Of Rights

As the court has observed, the parties initially viewed this declaratory judgment action as involving the complicated context created by two statutes, one state, and one federal, and originally cast their arguments in terms of whether the state statute is preempted by the federal one. Thus, the court will first examine the provisions of the two statutes in question and the principles of preemption.

### 1. Preemption

The provision of Iowa law upon which the Fosters principally rely as precluding any possibility that Medicare has a right or interest in the proceeds of their settlement with the medical malpractice defendants is Iowa Code § 147.136. That statute provides, in essence, that "[i]n an action for damages for personal injury against a physician ... based on the alleged negligence of the practitioner ... the damages awarded shall not include actual economic losses ... to the extent that those losses are replaced or are indemnified by insurance, or by governmental, employment, or service benefit programs...." Iowa Code § 147.136. The statute was passed by the Iowa legislature in 1975. *See* Acts 1975 (66 G.A.) ch. 239, § 16. Its purpose, as articulated by the Iowa Supreme Court, was as follows:

> It thus appears that the legislature's purpose in enacting section 147.136 was to reduce the size of malpractice verdicts by barring recovery for the portion of the loss paid for by collateral benefits. The verdicts would presumably result in reduction in premiums for malpractice insurance, making it affordable and available, helping to assure the public of continued health care services.

*Lambert v. Sisters of Mercy Health Corp.,* 369 N.W.2d 417, 423 (Iowa 1985) (quoting *Rudolph v. Iowa Methodist Medical Ctr,* 293 N.W.2d 550, 558 (Iowa 1980)). The *Lambert* court amplified this conclusion, by stating that "[t]he legislature's intent was to help assure the public of continued health care services at affordable rates." *Id.* at 424.[8]

---

7. A district court's grant of declaratory judgment is reviewed for abuse of discretion. *Morrison v. Mahaska Bottling Co.,* 39 F.3d 839, 846 (8th Cir.1994); *Century Indem. Co. v. McGillacuty's, Inc.,* 820 F.2d 269, 270 (8th Cir.1987) ("regular abuse of discretion standard applies when district court has granted declaratory relief," citing *Interdynamics, Inc. v. Wolf,* 698 F.2d 157, 167 nn. 9 & 10 (3d Cir.1982)).

8. The Iowa Supreme Court's decision in *Rudolph* provides further explanation of what prompted the Iowa legislature to act in passing the statute:
> Our legislature stated its objective when it enacted section 147.136 as part of an act which contained several provisions relating to medical malpractice. After finding that a critical situation existed "because of the high cost and impending unavailability of medical malpractice insurance," the legislature said the intent of its enactment was to provide "an interim

The MSP statute,[9] upon which Medicare relies, was designed to make Medicare the secondary payer of medical benefits of beneficiaries with respect to other health plans. The most recent of federal decision to discuss the MSP describes the purpose of the statute as follows:

> The pertinent MSP provision, found in Title XVIII of the Social Security Act, 42 U.S.C. § 1395y(b) (Omnibus Budget Reconciliation Act of 1980), was enacted by Congress for the express purpose of lowering overall federal Medicare disbursements by requiring Medicare beneficiaries to exhaust all available private ... insurance

coverage before resorting to their Medicare coverage. *See* H.R.Rep. No. 1167, 96th Cong., 2d Sess. 389, reprinted in 1980 U.S.C.C.A.N. 5526; *infra* note 3.

*United States v. Rhode Island Insurers' Insolvency Fund*, 80 F.3d 616, 618 (1st Cir. 1996); *Zinman v. Shalala*, 67 F.3d 841, 843 (9th Cir.1995).

▮ Generally, federal law can preempt state law without an express statement by Congress when the federal statute implies an intention to preempt state law or when state law directly conflicts with federal law. *Van Bergen v. State of Minn.*, 59 F.3d

---

solution to the impending unavailability of medical malpractice insurance." 66th G.A., 1975 Sess., ch. 239, § 1. *Rudolph*, 293 N.W.2d at 558. The Iowa Supreme Court has explained only generally how the statute was to achieve these purposes. In *Lambert*, the Iowa Supreme Court described the effect of § 147.136 as "abrogat[ing] the collateral source rule in specified situations involving medical and hospital malpractice claims." *Lambert*, 369 N.W.2d at 423; *Rudolph*, 293 N.W.2d at 557 (recognizing that the statute abrogates the collateral source rule "at least partially"); *Groesbeck v. Napier*, 275 N.W.2d 388, 391 (Iowa 1979) (same).

9. The statute provides as follows:

**§ 1395y. Exclusions from coverage and medicare as secondary payer.**

 \* \* \* \* \* \*

**(b) Medicare as secondary payer**

 \* \* \* \* \* \*

**(2) Medicare as secondary payer**

**(A) In general**

Payment under this subchapter may not be made, except as provided in subparagraph (B), with respect to any item or service to the extent that—

(i) payment has been made, or can reasonably be expected to be made, with respect to the item or service as required under paragraph (1), or

(ii) payment has been made or can reasonably be expected to be made promptly (as determined in accordance with regulations) under a workmen's compensation law or plan of the United States or a State or under an automobile or liability insurance policy or plan (including a self-insured plan) or under no fault insurance.

In this subsection, the term "primary plan" means a group health plan or large group health plan, to the extent that clause (i) applies, and a workmen's compensation law or plan, an automobile or liability insurance policy or plan (including a self-insured plan) or no fault insurance, to the extent that clause (ii) applies.

**(B) Repayment required**

**(i) Primary plans**

Any payment under this subchapter with respect to any item or service to which subparagraph (A) applies shall be conditioned on reimbursement to the appropriate Trust Fund established by this subchapter when notice or other information is received that payment for such item or service has been or could be made under such subparagraph. If reimbursement is not made to the appropriate Trust fund before the expiration of the 60–day period that begins on the date such notice or other information is received, the Secretary may charge interest (beginning with the date on which the notice or other information is received) on the amount of the reimbursement until reimbursement is made (at a rate determined by the Secretary in accordance with regulations of the Secretary of the Treasury applicable to charges for late payments).

**(ii) Action by United States**

In order to recover payment under this subchapter for such an item or service, the United States may bring an action against any entity which is required or responsible under this subsection to pay with respect to such item or service (or any portion thereof) under a primary plan (and may, in accordance with paragraph (3)(A) collect double damages against that entity), or against any other entity (including any physician or provider) that has received payment from that entity with respect to the item or service, and may join or intervene in any action related to the events that gave rise to the need for the item or service.

**(iii) Subrogation rights**

The United States shall be subrogated (to the extent of payment made under this subchapter for such an item or service) to any right under this subsection of an individual or any other entity to payment with respect to such item or service under a primary plan.

42 U.S.C. § 1395y(b)(2)(A)–(B)(iii).

1541, 1548 (8th Cir.1995) (citing *New York Conference of Blue Cross v. Travelers Ins.*, —— U.S. ——, ——, 115 S.Ct. 1671, 1676, 131 L.Ed.2d 695 (1995); *Pacific Gas & Elec. Co. v. State Energy Resources Conservation & Dev. Comm'n*, 461 U.S. 190, 203–04, 103 S.Ct. 1713, 1721–22, 75 L.Ed.2d 752 (1983)); *Kinley Corp. v. Iowa Utilities Bd.*, 999 F.2d 354, 357 (8th Cir.1993) (also finding authority in the Supremacy Clause, U.S. Const., Art. VI, cl. 2, and stating that the clause " 'invalidates state laws that "interfere with, or are contrary to," federal law,' " quoting *Hillsborough County v. Automated Med. Labs., Inc.*, 471 U.S. 707, 712, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714 (1985)). Congressional intent is the critical question in a preemption analysis. *Kinley*, 999 F.2d at 357 (citing *Louisiana Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 369, 106 S.Ct. 1890, 1898–99, 90 L.Ed.2d 369 (1986)).

■ The Eighth Circuit Court of Appeals has observed that "[p]reemption traditionally comes in four 'flavors' ":

(1) "express preemption," resulting from an express Congressional directive ousting state law (*Morales v. Trans World Airlines, Inc.*, [504] U.S. [374], 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992); (2) "implied preemption," resulting from an inference that Congress intended to oust state law in order to achieve its objective (*Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941)); (3) "conflict preemption," resulting from the operation of the Supremacy Clause when federal and state law actually conflict, even when Congress says nothing about it (*Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 143, 83 S.Ct. 1210, 1218, 10 L.Ed.2d 248 (1963); and (4) "field preemption," resulting from a determination that Congress intended to remove an entire area from state regulatory authority (*Fidelity Fed. Savs. & Loan Ass'n v. de la Cuesta*,

458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982)). *See Pacific Gas & Elec. Co. v. State Energy Resources Conservation & Dev. Comm'n*, 461 U.S. 190, 203–04, 103 S.Ct. 1713, 1721–22, 75 L.Ed.2d 752 (1983); *see generally*, Burt Neuborn, *An overview of Preemption* (Fed.Jud.Center, Feb. 9, 1993).

*Kinley*, 999 F.2d at 358 n. 3; *see also Van Bergen*, 59 F.3d at 1548 (court considers whether Congress has "occupied the field" of regulation, as well as whether the state law is in actual conflict with the federal law.); *Burlington N. R.R. Co. v. State of Minnesota*, 882 F.2d 1349, 1352 (8th Cir.1989). Thus, federal law preempts state law not only where the two are plainly contradictory, but also where " 'the incompatibility between [them] is discernible only through inference.' " *Hankins v. Finnel*, 964 F.2d 853, 861 (8th Cir.1992) (quoting *Hayfield Northern R.R. Co. v. Chicago & N.W. Transp. Co.*, 467 U.S. 622, 627 (1984)), *cert. denied sub nom. Missouri v. Hankins*, 506 U.S. 1013, 113 S.Ct. 635, 121 L.Ed.2d 566 (1992). To put it another way, "[p]reemption ... will arise when 'state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' " *Id.* (quoting *Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 300, 108 S.Ct. 1145, 1150–51, 99 L.Ed.2d 316 (1988), in turn citing *Hines*, 312 U.S. at 67, 61 S.Ct. at 404); *see also Silkwood v. Kerr–McGee Corp.*, 464 U.S. 238, 248, 104 S.Ct. 615, 621, 78 L.Ed.2d 443 (1984) (preemption occurs when "it is impossible to comply with both state and federal law," or "state law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress.").

■ Applying these same preemption principles, other courts have found that the MSP preempts conflicting provisions of state laws.[10] However, the court concludes that

10. *See, e.g., Rhode Island Insurers' Insolvency Fund*, 80 F.3d at 622–23 (MSP preempts Rhode Island Insurers' Insolvency Fund Act, which shifted "primary payer" responsibility onto Medicare); *Geier*, 816 F.Supp. at 1337 (MSP preempts Wisconsin common law and contract regarding subrogation rights, and stating that "[p]reemption occurs when Congress enacts a federal statute and expresses a clear intent to

preempt state law or when there is an outright conflict between federal and state law," citing *Louisiana Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 368, 106 S.Ct. 1890, 1898, 90 L.Ed.2d 369 (1986)); *Smith v. Travelers Indem. Co.*, 763 F.Supp. 554 (M.D.Fla.1989) (§ 1395y(b) preempts Florida's collateral source rule which conflicted with congressional intent to make Medicare the secondary payer, applying stan-

the rights of the parties can be declared in this case without conducting a preemption analysis, because, irrespective of preemption of the Iowa statute by the MSP, Medicare is not entitled to recover from the tentative settlement in this case.[11]

### 2. Whose property is the settlement?

 The tentative settlement of the Fosters' case in state court is not a "discounted settlement" of the kind described in *Zinman v. Shalala*, 67 F.3d 841 (9th Cir.1995), in which the Ninth Circuit Court of Appeals concluded that even if the settlement was "discounted," *i.e.*, was for less than all of the Medicare beneficiary's damages, Medicare was entitled to a full recovery out of that settlement for benefits it had paid. *See Zinman*, 67 F.3d at 844–45. In *Zinman*, only the claims of the Medicare beneficiaries who made up the class had been settled in their individual lawsuits against the tortfeasors responsible for their injuries. *Id.* at 843. Thus, the settlements in question each involved settlement of the medical expenses

dards stated in *Silkwood*, 464 U.S. at 248, 104 S.Ct. at 621); *Varacalli v. State Farm Mut. Auto. Ins. Co.*, 763 F.Supp. 205, 209 (E.D.Mich.1990) (§ 1395y(b) preempts state no-fault insurance law because state statute conflicted with federal law); *St. Agnes Hosp. v. Jaeckel*, 616 F.Supp. 426 (E.D.Wis.1985) (as federal law, § 1395y(b) preempts both state law and state common law rules).

11. The court's principal concerns about its original ruling, now withdrawn, were that it determined that the MSP preempted the state statute, and that only Medicare could assert that preemption, when it was not necessary for the court to make that determination, even when the questions had been posed and argued by both parties. Such declarations fell outside of the proper limits of the "case or controversy" presented in the circumstances of the case, *Marine Equip. Management Co.*, 4 F.3d at 646, and were not necessary to declare the rights of the parties in the circumstances of this case. 28 U.S.C. § 2201. It was the second of these conclusions that both parties had criticized, but the court's withdrawal of the prior ruling moots all of the grounds on which the Fosters sought reconsideration.

12. This statute provides as follows:
 **613.15 Injury or death of spouse—measure of recovery.**
 In any action for damages because of the wrongful or negligent injury or death of a woman, there shall be no disabilities or restrictions, and recovery may be had on account

damages of the beneficiaries, along with other claims *of the beneficiaries*. However, in this case, the claims that are tentatively settled do not belong to the Medicare beneficiary, but to her children.

Under Iowa law, loss of consortium claims by children must be brought in the name of the estate of the decedent. Iowa Code § 613.15.[12] However, damages in such a wrongful death case that are for loss of services and support of a deceased parent are apportioned by the court among the surviving children. Iowa Code § 633.336.[13] The Iowa Supreme Court has repeatedly held that such loss of consortium claims, even though brought in the name of the estate, belong to the children:

> In *Madison v. Colby*, 348 N.W.2d [202,] 209 [ (Iowa 1984) ], we made clear that 'all loss of consortium recoveries ... pursuant to common law ... go to the person who incurred the loss,' in this case Jazzber. *See Audubon–Exira Ready Mix, Inc. v. Illinois Cent. Gulf R.R.*, 335 N.W.2d 148,

thereof in the same manner as in cases of damage because of the wrongful or negligent injury or death of a man. In addition she, or her administrator for her estate, may recover for physician's services, nursing and hospital expense, and in the case of both women and men, such person, or the appropriate administrator, may recover the value of services and support as spouse or parent, or both, as the case may be, in such sum as the jury deems proper; provided, however recovery for these elements of damage may not be had by the spouse and children, as such, of any person who, or whose administrator, is entitled to recover same.
Iowa Code § 613.15.

13. The statute provides, in pertinent part, as follows:
 **633.336 Damages for wrongful death.**
 When a wrongful act produces death, damages recovered as a result of the wrongful act shall be disposed of as personal property belonging to the estate of the deceased; however, if the damages include damages for loss of services and support of a deceased spouse and parent, the damages shall be apportioned by the court among the surviving spouse and children of the decedent in a manner as the court may deem equitable consistent with the loss of services and support sustained by the surviving spouse and children respectively....
 Iowa Code § 633.336.

152 (Iowa 1983) (stating amounts recovered by a parent's administrator for a child's loss of parental consortium is the child's property). Therefore, we conclude the Tin Shed structured settlement is Jazzber's property and not the property of Berta's estate. *See Gail v. Clark*, 410 N.W.2d 662, 668–69 (Iowa 1987).

*Fort Madison Bank & Trust Co. v. Farm Bureau Mut. Ins. Co.*, 543 N.W.2d 591, 595 (Iowa 1996); *see also Condon v. Employers Mut. Cas. Co.*, 529 N.W.2d 630, 631–32 (Iowa Ct.App.1995) (the purpose of the 1989 amendment to Iowa Code § 633.336 "is to direct damages for loss of service be apportioned to the person who sustained the damage," citing *Madison*, 348 N.W.2d at 209, but wrongful death action continues to belong to the estate); *Gail v. Clark*, 410 N.W.2d 662, 668–69 (Iowa 1987) (child's loss of parental consortium claim is property right belonging to child); *Nelson v. Ludovissy*, 368 N.W.2d 141, 145–46 (Iowa 1985) (because the Iowa Supreme Court had held in *Weitl v. Moes*, 311 N.W.2d 259, 270 (Iowa 1981), that a child's loss of consortium claim, though independent, should be joined with the injured parent's claims whenever feasible, the child's loss of consortium claim was subject to § 613.15, which required that the child's claim be brought in the name of the estate; the court rejected an argument that adult children may pursue consortium and loss of support claims under § 613.15 under their own names as a matter of right, because the statute could be avoided only when the child first establishes that it is "impossible, impracticable, or not in the child's best interest for the parent to maintain the action."); *Beeck v. S.R. Smith Co.*, 359 N.W.2d 482, 484–85 (Iowa 1984) (the Iowa Supreme Court held in *Weitl*, 311 N.W.2d at 270, that a child has an independent cause of action for loss of parental consortium, but such a claim is not "completely independent," because in *Madison*, 348 N.W.2d at 209, and *Audubon–Exira Ready Mix, Inc. v. Illinois Central Gulf R.R.*, 335 N.W.2d 148 (Iowa 1983), the court made clear that the injured parent is the proper party to seek recovery for the child); *Madison*, 348 N.W.2d at 209 ("[W]e hold that consortium claims must be joined with the injured person's or administrator's action

whenever feasible. If brought separately, the burden will be on the consortium claimant to show joinder was not feasible."); *Audubon–Exira Ready Mix, Inc.*, 335 N.W.2d at 152 (child is "wrong party" to bring claim of loss of parental consortium claim; pursuant to § 613.15, such a claim "should be brought by the decedent's administrator," or, if the parent was injured rather than killed, "the injured parent is the proper party to recover for the child under section 613.15," but "[a]mounts so recovered for the child are the child's property.").

Furthermore, the loss of consortium claims do not include Mildred Foster's medical expenses, because a claim for medical expenses belongs only to the estate. Iowa Code § 613.15, 633.336; *Condon*, 529 N.W.2d at 632 (consortium damages are not duplicative of workers compensation paid to a widow, because the wrongful death action continues to belong to the estate, and workers compensation benefits continue to be payable to both the estate and the widow); *Matter of Estate of Wagner*, 507 N.W.2d 711, 713 (Iowa Ct. App.1993) ("It appears that the intent of the legislature [in enacting Iowa Code § 633.336] was, if the damages recovered were not for loss of services of a deceased spouse or parent, then the damages would be distributed as personal property of the estate.").

It is at this juncture that the rule stated in *Waters*, and asserted by the Fosters, is properly applicable. *See Waters*, 9 F.3d at 400. These provisions of Iowa law are not preempted by the MSP statute, because they do not have any effect of placing Medicare as a primary payer ahead of a private insurer, *Hankins*, 964 F.2d at 861; *see also Schneidewind*, 485 U.S. at 300, 108 S.Ct. at 1150–51 (1988); *Silkwood*, 464 U.S. at 248, 104 S.Ct. at 621; *Hines*, 312 U.S. at 67, 61 S.Ct. at 404, but instead simply establish the extent of the Medicare beneficiary's claim against the tortfeasor or its insurer as distinguishable from the claims of other persons also injured by the tortfeasor. The provisions of Iowa Code §§ 613.15 and 633.336 and the case law cited above merely establish Mildred Foster's estate's "share of the pie," and therefore, as the Fifth Circuit Court of Appeals held in *Waters*, "Once [the Medicare beneficiary's]

allotment is determined, federal law gives the government a superior right to receive that money. That is what is meant by the government's 'superior' claim to the insurance proceeds—not that the government has a superior claim to community insurance funds beyond the beneficiary's own share of those funds." *Waters*, 9 F.3d at 400. Here, the Medicare beneficiary's "share of the pie," Mildred's proper share, does not include her children's recovery for loss of consortium, and Medicare's superior claim does not reach the children's recovery. *Id.*

Medicare has suggested that such a conclusion invites the structuring of settlements so that substantial portions of the settlement can be shielded from any recovery by Medicare. However, Medicare has not produced any evidence that such a "sham" settlement has occurred in this case. Instead, all of the evidence before the court suggests that the Fosters have, in good faith, reached a tentative settlement of all of the claims they had brought on behalf of either the estate or the children.[14] Although Medicare is subrogated to the *estate's* right of recovery, 42 U.S.C. § 1395y(b)(2)(B)(iii), that right of subrogation does extend to any recovery that is the property of the children even if the claims of the children had to be brought by the estate owing to a quirk of Iowa law. The court need not address the extent of Medicare's right of reimbursement against a recovery for the claims of a Medicare beneficiary or her estate in this case, because the estate in fact has no recovery here.

This conclusion does not leave Medicare without a means to recover the medical expenses conditionally paid on Mildred Foster's behalf. Congress has provided Medicare with a right of direct action against the tortfeasors pursuant to 42 U.S.C. § 1395y(b)(2)(B)(ii). 42 U.S.C. § 1395y(b)(2)(B)(ii) (under this subdivision, the "United States may bring an action

against any entity which is required or responsible under this subsection to pay with respect to such item or service ... or against any other entity (including any physician or provider) that has received payment from that entity with respect to the item or service...."). Medicare may intervene in the state action to assert its claims against the tortfeasors' insurer or may bring its own separate action against the liability insurer pursuant to the direct action provisions of the MSP. 42 U.S.C. § 1395y(b)(2)(B)(ii) (subdivision provides for direct action against liability insurer and also provides that Medicare "may join or intervene in any action related to the events that gave rise to the need for the item or service."). It would obviously be more efficient for everyone involved for a single settlement of the underlying state lawsuit to encompass settlement of Medicare's reimbursement rights. However, what course Medicare may choose to take in the absence of a right of recovery against the Foster children's recovery for loss of consortium is a matter this court need not decide. What roles Iowa Code § 147.136 and possible preemption of that statute by the MSP may play in a direct action by Medicare against the tortfeasors are questions that also are not before the court in this action between the Fosters and Medicare. Consequently, the court offers no opinion on those matters here.

The court should be as specific as possible here in declaring the consequences of its conclusions upon the underlying litigation. First, the court need not decide whether Medicare would have a right to that portion of any settlement that is Mildred Foster's estate's "share of the pie," because there appears to be no such share in this case.[15] Second, under no circumstances is Medicare entitled to recover from that portion of the settlement that is not for the claims of the Medicare beneficiary or her estate. *Waters*, 9 F.3d at 400. In other words, Medicare is

---

14. The estate could not properly assert a right to damages for medical expenses paid by Medicare pursuant to Iowa Code § 147.136.

15. Although the estate claimed damages in the amount of medical expenses, which were precluded by Iowa Code § 147.136, and burial expenses, which were not, the record before the

court does not indicate that the tentative settlement contingent upon this court's determinations includes any damages for the estate. There could be myriad reasons why a settlement would include no recovery on certain claims against the tortfeasors, but the court need not explore the reasons here.

not entitled to any share of a settlement of the children's loss of parental consortium claims.

### III. CONCLUSION

The course between the Charybdis of a statutory maelstrom and the Scylla of federal preemption is to recognize against settlement of what claims or against which parties Medicare may properly assert a right of reimbursement under the MSP statute.[16] Irrespective of whether the MSP preempts Iowa Code § 147.136, the court concludes that Medicare cannot assert a right of reimbursement against the proceeds of the tentative settlement in this case, which is a settlement of loss of consortium claims. This is so, because the loss of consortium claims must be brought in the name of the estate owing to a quirk of Iowa law, but nonetheless are the property of the children, not of the decedent Medicare beneficiary. The court need not decide whether, to the extent that a settlement might involve settlement of claims of an estate, that "share of the pie," once determined, could properly be a source of reimbursement of Medicare's payments, because there is no such "share of the pie" here.

The court finds that, on the record currently before it, the settlement in question is for the children's loss of consortium claims. The proceeds of such a settlement, under Iowa law not preempted by the MSP, are the property of the children. Thus, the court declares that Medicare has no right or interest in the settlement of the Foster children's loss of consortium claims. This conclusion does not preclude Medicare's institution of a direct cause of action against the tortfeasors' liability insurer, in which the question of preemption of Iowa Code § 147.136 may properly arise.

Declaratory judgment as stated herein is therefore **granted** in favor of plaintiffs.

The plaintiffs' motion to reconsider the court's April 24, 1996, disposition of this declaratory judgment action is **granted** to the extent that the April 24, 1996, ruling and judgment pursuant thereto are **withdrawn** in favor of this amended ruling and judgment to be entered pursuant to it.

**IT IS SO ORDERED.**

---

16. Even though it has taken two tries for the court to sail this course, the court has ultimately had better success than did Odysseus, who avoided Charybdis, but lost a half-dozen members of his crew to Scylla. The court has avoided both the statutory maelstrom and the Scylla of preemption.