United States Court of Appeals,

Fifth Circuit.

No. 92-2789.

Billy Albert WATERS, Sr., BNF, et al., Plaintiffs,

Gerald (Owens) King, a minor child by and through his next of friend, Diane Owens, Plaintiffs-Appellants,

v.

FARMERS TEXAS COUNTY MUTUAL INSURANCE COMPANY, Defendant,

Donna E. Shalala, Secretary of U.S. Department of Health and Human Services, Defendant-Appellee.

Dec. 16, 1993.

Appeal from the United States District Court for the Southern District of Texas.

Before JONES and DeMOSS, Circuit Judges and KAZEN,[*] District Judge.

EDITH H. JONES, Circuit Judge:

Gerald Owens King, by and through his next friend, Diane Owens ("appellant"), appeals the district court's summary judgment in favor of the Secretary of the United States Department of Health and Human Services ("the government"), 797 F.Supp. 575. The district court held that the government is entitled by statute to receive Medicare reimbursement from a private insurance carrier in an amount greater than Medicare's insured could recover under Texas law. 42 U.S.C. § 1395y(b)(2)(A) and (B). Because the summary judgment has no effect as to the appellant and was improperly granted on the merits, we reverse and remand the decision of the court below.

DISCUSSION

In the summer of 1990, Annie Searles, Billy Waters, Marvin Searles, Lee Searles, and Gerald King, a minor child, were seriously injured in an accident in Freestone County, Texas while travelling in the same car. The driver of the other car fled, and his identity and whereabouts are unknown. Annie Searles, suffering from terminal cancer at the time of the accident, incurred over $29,000 in medical expenses after the accident, all of which was paid by Medicare. It was never determined

---

[*]District Judge of the Southern District of Texas, sitting by designation.

what portion of the $29,000 went to treatment of Annie's cancer and what portion went to the treatment of her car accident injuries. Annie subsequently died of cancer. The other four occupants of the car paid their own medical bills. The owner of the car was insured by Farmers Texas County Mutual Insurance Company ("Farmers"). The insurance policy has a limit of $20,000 per claimant per accident and an overall limit of $40,000 for all claimants combined per accident.

Billy, Marvin, and Lee sued Farmers in state court to recover for personal injuries and damages suffered in the accident. The appellant was not involved in the suit. In response to the suit, Farmers filed a petition in interpleader, depositing with the clerk of the state court the $40,000 to cover the insurance proceeds payable under the policy ("interpleader fund") and bringing in Blue Cross and Blue Shield of Texas, Inc. ("Blue Cross") and the appellant as third party defendants to the interpleader action. The interpleader petition incorrectly stated that at the time of the petition the appellant was asserting a claim for personal injuries against Farmers. The record indicates that all counsel of record were served with the petition in interpleader. However, the appellant was not a party in any way to the lawsuit against Farmers and, according to the record, was not served with the petition in interpleader.[1]

The government was eventually substituted for Blue Cross in the action and shortly thereafter removed the case to federal court. The government then counterclaimed against Farmers and crossclaimed against all of the occupants of the car, including the appellant, for reimbursement of the Medicare funds expended on behalf of Annie following the car accident. The appellant was not served with the notice of removal. As a point of clarification, the record indicates that the crossclaim was mailed to Gerald King who at the time, and still today, is a minor child. The government was aware of the fact that King was a minor, yet the pleading was mailed directly to him—not to one of his parents or guardians as next friend. This effort by the government falls short of effective service

---

[1]*See* Fed.R.Civ.P. 4(d)(2) (providing that an infant is to be served in the manner prescribed by the law of the state in which the service is made). The appellant resides in Tennessee. Tennessee law provides that service upon an unmarried infant must be made by delivering a copy of the summons and complaint to a known resident guardian or conservator or by delivering the copies to the infant's parent having custody. Tenn.R.Civ.P. 4.04(2). In addition to these requirements, if the infant is 14 years or older, then the infant must also be provided with service. *Id. See also* Fed.R.Civ.P. 4(c)(2)(C)(ii) (disallowing service of process upon infants by mail).

of the pleading on the appellant. Fed.R.Civ.P. 5(a). Even if the government believed that the appellant was at this point a party in default for failure to appear, simply mailing the crossclaim to the appellant was insufficient. Fed.R.Civ.P. 5(a) provides that any pleading asserting a new or additional claim against a party in default for failure to appear must be served pursuant to Fed.R.Civ.P. 4. Furthermore, it falls well short of providing the appellant with service of process sufficient to join the appellant as a party to the suit. *See* Fed.R.Civ.P. 4(c)(2)(C)(ii).

The government moved against the other occupants of the car for summary judgment, which the court granted on August 7, 1992. The appellant was not notified of this motion for summary judgment. The district court awarded the government the $20,000 limit allowed to an individual under the Farmers policy, leaving the four remaining occupants of the car to apportion the remaining $20,000 among themselves. The final judgment was entered on August 11, 1992. The appellant was added as a party to the suit on August 13, 1992.[2] He unsuccessfully sought reconsideration of the summary judgment. The minor, appellant Gerald King, appeals the decision of the district court.[3]

A.

The record does not reflect that the appellant Gerald King was served in the lawsuit or that he voluntarily appeared before August 13, 1992. It follows that the appellant was not a party to the suit at the time the summary judgment motion was filed and decided. The summary judgment binds only the parties in the suit. To the extent that it purported to affect the rights of the appellant to his rightful share of the insurance proceeds, the summary judgment should have had no effect against him. The court should have granted his motion to reconsider for the purpose of allowing him to make his arguments known. Moreover, he was not given notice of the motion for summary judgment. It is unreasonable to require the appellant to respond to a motion of which he had no knowledge. He was not expected or required to respond. The summary judgment rendered under these circumstances has no effect as to him.

---

[2]Confusingly, the record indicates that Diane Owens was added as a party on August 13, 1992. The minor Gerald Owens King was not added until October 6, 1992.

[3]The others did not appeal.

B.

As a matter of judicial economy, however, because King and the government have filed briefs on the merits of the issue decided by the district court, it is prudent for this court to review the summary judgment granted in favor of the government. A movant is entitled to summary judgment only if there are no issues of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). This court's decision turns on whether the government's substantive legal argument was correct. The heart of the government's challenge is its interpretation of its powers under federal statutory law.

The Medicare Secondary Payer statute, 42 U.S.C. § 1395y(b), makes Medicare the secondary payer to group health insurance, workers' compensation, and automobile and liability insurance. Group health insurance, workers' compensation, and automobile and liability insurance are to be the primary payers of medical costs for Medicare beneficiaries. 42 U.S.C.A. § 1395y(b)(2)(A) (West Supp.1993). The federal statute expressly provides that any payment of medical costs by Medicare for which private insurance is the primary payer is conditioned upon reimbursement from the insurer or any recipient of the insurance proceeds. 42 U.S.C.A. § 1395y(b)(2)(B)(i) (West Supp.1993).

The government contends that it is entitled to recover the full $20,000 from the Farmers policy—the limit for any individual in an accident—under either of two theories. First, the government argues that it has an independent right of recovery from the insurer or from a payee of the insurance proceeds. This theory relies on 42 U.S.C. § 1395y(b)(2)(B)(ii) which provides:

> In order to recover payment under this subchapter for such an item or service, the United States may bring an action against any entity which is required or responsible under this subsection to pay with respect to such item or service (or any portion thereof) under a primary plan ... or against any other entity ... that has received payment from that entity with respect to such item or service, and may join or intervene in any action related to the events that gave rise to the need for the item or service.

42 U.S.C.A. § 1395y(b)(2)(B)(ii) (West Supp.1993). The government contends that this section gives it a right paramount to all others to recover the insurance proceeds due to a Medicare beneficiary.

Second, the government relies on 42 U.S.C. § 1395y(b)(2)(B)(iii) which provides:

The United States shall be subrogated (to the extent of payment made under this subchapter

for such an item or service) to any right under this subsection of an individual or any other entity to payment with respect to such item or service under a primary plan.

42 U.S.C.A. § 1395y(b)(2)(B)(iii) (West Supp.1993). The government argues that this section equally grants it a paramount right to recover insurance proceeds due to a Medicare beneficiary.

Under either provision—an independent statutory right under § 1395y(b)(2)(B)(ii) or supreme subrogation under § 1395y(b)(2)(B)(iii)—the government stands to recover from the interpleader fund exactly what Annie should recover under the interpleader fund. However, the government wants more. It argues that no matter what Annie's entitlement would be under the insurance policy, Medicare should be reimbursed $20,000, the full extent of the policy's individual liability. The problem with the government's position is that it is unsupported in the statutory language upon which the government relies.

The independent statutory right section cited by the government, 42 U.S.C. § 1395y(b)(2)(B)(ii), provides that Medicare recovers only what the primary provider "is required or responsible ... to pay with respect to such item or service" to the beneficiary. 42 U.S.C.A. § 1395y(b)(2)(B)(ii) (West Supp.1993). The language of the statute puts the government in a position superior to all other claimants on Annie's share of the pie, but it does not put the government in a position superior to Annie's own claim.

Section 1395y(b)(2)(B)(iii), the supreme subrogation provision, is even less helpful to the government's position. It provides that the United States is subrogated "to any *right ... of an individual* ... to payment with respect to such item or service under a primary plan." 42 U.S.C.A. § 1395y(b)(2)(B)(iii) (West Supp.1993) (emphasis added). Again, this section predicates the reimbursement of Medicare payments on the right of the individual to recover from the primary insurer. If the individual's right to payment under the primary plan is limited by the terms of the plan or by operation of state law, then the government's subrogated claim is equally limited.

The legislative history adds nothing in support of the government's position that it is entitled to reimbursement to the full extent of individual recovery potentially available under the insurance policy. The House Report explaining the Medicare provision states that the statute allows the government to recover insurance proceeds "directly from the third party [Farmers] whether or not

the beneficiary brings suit to recover and subrogate[s] to the United States *the right of the individual* or anyone else to payment from the third party." H.R.Rep. No. 432, 98th Cong., 2d Sess., pt. 2, at 1803 (1984), *reprinted in* 1984 U.S.C.C.A.N. 697, 1417 (emphasis added). This language adds nothing to the government's position. It simply reiterates the uncontested principle that the government has supreme subrogation over the proceeds payable to the beneficiary of the primary insurance.

The House Report states that "[M]edicare will ordinarily pay for the beneficiary's care in the usual manner and then [the government may] seek reimbursement from the private insurance carrier after, and to the extent that, such carrier's liability under the private policy for the services has been determined." H.R.Rep. No. 1167, 96th Cong., 2d Sess., at 389 (1980), *reprinted in* 1980 U.S.C.C.A.N. 5526, 5752. The point is that in this case the extent of Farmers' liability to Annie has *not* been determined, and cannot be, until the funds are apportioned to the various claimants.

No matter what theory is pursued—statutory right or subrogation—the government stands exactly in Annie's shoes when recovering from the available insurance funds. The government's "superior" position vis a vis other claimants would not entitle it to dip into the insurance proceeds beyond Annie's maximum allotment of $20,000. Consequently, if Annie's true maximum allotment under the policy is somewhat less than $20,000, then the government can be reimbursed only that amount. Once Annie's allotment is determined, federal law gives the government a superior right to receive that money. That is what is meant by the government's "superior" claim to the insurance proceeds—not that the government has a superior claim to community insurance funds beyond the beneficiary's own share of those funds.

Because it cannot yet be determined whether Annie would have been entitled to receive the full $20,000 from Farmers, the government's reimbursement is still indeterminate. As a result, there remain issues of material fact yet to be determined. Summary judgment for the government in the amount of $20,000 was improper.

CONCLUSION

In sum, the government moved for summary judgment oblivious to the fact that the minor

child appellant had never been served with process in state or federal court, had never been served with notice of removal, and had never filed a pleading or otherwise entered an appearance. The government made no effort to serve its motion properly upon the minor appellant. The court is disappointed that the government was so heedless of the procedural rights of its opponent. As if this were not enough, the government's overreaching interpretation of its authority under the Medicare Secondary Payer statute is insupportable. These legal and procedural defects require us to reverse and remand the summary judgment rendered against Gerald King.

REVERSED and REMANDED.