James M. DENEKAS and Carol R.D. De Jong, Individually and as Co-Executors of the Estate of Raymond D. Denekas, Plaintiffs,

v.

Donna E. SHALALA, Secretary of the Department of Health and Human Services, and Blue Cross Blue Shield of Iowa, Defendants.

Civil No. 4–95–CV–30017.

United States District Court, S.D. Iowa, Central Division.

Oct. 10, 1996.

Michael J. Galligan, Galligan Law Firm PC, Des Moines, IA, for James M. Denekas, Carol R.D. De Jong.

John E. Beamer, United States Attorney, Des Moines, IA, for Department of Health and Human Services.

Michael J. Eason, Ahlers Cooney Dorweiler Haynie Smith & Allbee, Des Moines, IA, for Blue Cross Blue Shield of Iowa.

### RULING ON CROSS–MOTIONS FOR SUMMARY JUDGMENT AND ORDER FOR JUDGMENT

WALTERS, United States Magistrate Judge.

#### I.

This matter is before the Court on cross-motions for summary judgment. On January 11, 1995, plaintiffs filed this action for declaratory relief seeking a determination of the parties' relative rights and interests to funds received under a settlement agreement between plaintiffs and two insurance carriers in connection with a wrongful death action arising out of an automobile accident on August 24, 1990. In that accident another car struck the Denekas automobile head on killing Edith Denekas and seriously injuring her husband, Raymond Denekas. Mr. Denekas was hospitalized for 266 days before dying on May 17, 1991. This case involves only the claims resulting from the death of Mr. Denekas. The principal issue is the extent to which the defendant Secretary may recover Medicare conditional payments from the settlement fund. For ease of reference, the government defendant will be referred to herein as "Medicare." Plaintiffs James Denekas and Carol De Jong are the surviving children of Mr. and Mrs. Denekas and executors of Mr. Denekas' estate.

Medicare and defendant Blue Cross and Blue Shield of Iowa ("BCBS") made substantial payments toward Mr. Denekas' extensive medical expenses. The parties stipulate Medicare made payments for medical expenses in the amount of $106,325.70, and BCBS made payments in the amount of $170,111.55. The Iowa probate court approved a settlement of the wrongful death claim against the other driver for the driver's liability policy limits of $100,000.00, and an

underinsurance claim under Mr. Denekas' automobile policy in the additional amount of $25,000.00. There is, therefore, a settlement fund from insurance proceeds in the total amount of $125,000.00 to pay claims arising out of the death of Mr. Denekas.[1]

Jurisdiction is predicated on 28 U.S.C. § 1331. On July 31, 1995 the parties consented to proceed before a United States Magistrate Judge and the case was referred to the undersigned. *See* 28 U.S.C. § 636(c). On October 30, 1995, plaintiffs filed a motion for summary judgment. They seek a declaration that the settlement proceeds should be apportioned pro rata with a share distributed to the surviving children of Mr. Denekas for their parental consortium claims free of the reimbursement/subrogation claims of Medicare and BCBS. They propose two alternatives. The first, which plaintiffs prefer, would also apportion a share of the settlement proceeds to the estate for its nonmedical claims free of the Medicare and BCBS claims. The second makes no apportionment for the estate's nonmedical claims. *See* Plaintiffs' Brief, at 3–4.

On November 30, 1995, defendant BCBS filed a combined resistance to plaintiffs' motion and a cross-motion for summary judgment. BCBS recognizes that as between them, Medicare's claim is primary. As a practical matter, BCBS will realize nothing on its subrogation claim unless Medicare's recovery comes "off the top" of the settlement fund before any apportionment to the consortium claims. If, instead, the children's consortium claims are apportioned free of Medicare's right of reimbursement, Medicare will receive all of the remaining money in the fund. Thus, BCBS joins Medicare in arguing Medicare has a statutory right of reimbursement from funds recovered by the estate, including for loss of parental consortium and nonmedical damages.

Defendant Medicare filed a combined resistance to plaintiffs' motion and a cross-

motion for summary judgment on December 1, 1995. Medicare argues its conditional payments for medical expenses may not be reduced by apportionment among competing claims to the estate's recovery and to the extent Iowa law requires apportionment of the parental consortium claims of the surviving children, it is preempted by federal law. Plaintiffs respond that reimbursement of Medicare's medical payments from the children's loss of consortium recovery would amount to an unconstitutional taking of the children's property in violation of the Fifth Amendment to the U.S. Constitution.

Hearing on the motions was held on April 29, 1996. Plaintiffs were represented by Des Moines attorney Richard Doyle. Defendant Medicare was represented by Assistant United States Attorney Gary Hayward and BCBS by Des Moines attorney Michael Eason. The motions are fully submitted.

## II.

The standards governing the Court's review of a motion for summary judgment are well-established. A party is entitled to summary judgment only when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Wabun–Inini v. Sessions,* 900 F.2d 1234, 1238 (8th Cir.1990) (citing Fed.R.Civ.P. 56(c)); *accord Munz v. Michael,* 28 F.3d 795, 798 (8th Cir.1994); *Woodsmith Publishing Co. v. Meredith Corp.,* 904 F.2d 1244, 1247 (8th Cir.1990). Here the parties agree that there are no disputed issues of material fact and that the case may be decided on the cross-motions for summary judgment. They also agree a declaratory judgment determining the rights of the parties to the insurance proceeds is appropriate. 28 U.S.C. § 2201(a). Indeed,

---

**1.** No party questions the inclusion of the $25,000.00 in underinsurance coverage proceeds as a part of the settlement fund subject to the competing claims of the parties, including the loss of parental consortium claims of James Denekas and Carol De Jong. The parties have expressly, or impliedly, included the proceeds in the analy-

sis set forth in their briefs. *See* Plaintiffs' Brief, at 3–4; BCBS Brief, at 4–5; Secretary's Brief, at 3. The Court has therefore also considered the underinsurance proceeds as a part of the fund without regard to its source. The underinsurance policy provisions are not before the Court.

they each ask the Court to determine their rights in the matter.

There is also no dispute about the amount of the claims made by the parties, or the reasonableness of the parental consortium claims. James Denekas and Carol De Jong each claim $37,500.00 for loss of parental consortium. The consortium figures are derived from an arbitrator's finding that the spousal and parental consortium claims in connection with the estate of Edith Denekas totaled $75,000.00. Exhibit I to Plaintiffs' Statement of Facts. In addition to the consortium claims, in the first of plaintiffs' two alternative proposals $125,000.00 is included in the total claims for the estate's nonmedical damages (pre-death physical and mental pain and suffering, loss of accumulation to the estate, and interest on premature funeral and burial expense). There is also no dispute about the reasonableness of this figure, though Medicare and BCBS maintain the estate's nonmedical damages are subject to their claims.[2]

In plaintiffs' first proposed apportionment, the total claims are:

| | |
|---|---|
| Medicare | $106,325.70 |
| BCBS | $170,111.55 |
| Estate's nonmedical claims | $125,000.00 |
| James Denekas | $ 37,500.00 |
| Carol De Jong | $ 37,500.00 |
| **TOTAL CLAIMS** | **$476,437.25** |

The settlement fund is $125,000.00, or about 26.24% of the total claims. If each claim is reduced to 26.24%, the following approximate allocation results (before deduction for attorney fees and costs):[3]

| | |
|---|---|
| Medicare ) medical | $ 27,896.00 |
| BCBS ) claims | $ 44,631.00 |
| Estate's nonmedical claims | $ 32,795.00 |
| James Denekas | $ 9,839.00 |
| Carol De Jong | $ 9,839.00 |
| **TOTAL DISTRIBUTION** | **$125,000.00** |

Because Medicare's claim is primary to BCBS, Medicare would receive the entire

total $72,520.00 amount allocated to medical expense claims.

In the second alternative proposed by plaintiffs, the estate's line for nonmedical claims of $125,000.00 is eliminated from the total claims, thus increasing to about 35.57% the amount apportioned to each of the remaining claims as follows:

| | |
|---|---|
| Medicare ) medical | $ 37,818.00 |
| BCBS ) claims | $ 60,506.00 |
| James Denekas | $ 13,338.00 |
| Carol De Jong | $ 13,338.00 |
| **TOTAL DISTRIBUTION** | **$125,000.00** |

Again, Medicare would have priority with respect to the amount allocated to medical expense claims.

BCBS proposes an allocation in which Medicare's $106,325.70 reimbursement claim is taken out and given to Medicare. The remaining $18,674.30 would then be divided proportionately between the parental consortium claims and the BCBS claim. BCBS would include an apportionment to both the estate's nonmedical claims and medical claims and exercise its subrogation rights against both. It maintains the estate's nonmedical claims are subject to its subrogation rights under BCBS coverage provisions. The result weights distribution of the remaining proceeds heavily in BCBS' favor. It would receive $14,939.44 and $3,734.86 would be divided between the two consortium claims. BCBS recognizes it does not have a right to recover its payments out of any amount allocated to the children's loss of consortium.

■ As noted, BCBS' proposed allocation is based in part on its assertion it has a contractual subrogation right against the estate's recovery for nonmedical items. It relies on paragraph one of the "our right to recover payments" section of the "general provisions" set forth in the benefits certifi-

---

**2.** To be accurate, as the Court understands Medicare's position at argument, it does not agree to the reasonableness of the amounts claimed for loss of parental consortium and nonmedical damages, but that as a practical matter if an apportionment must be made it does not contest these figures or wish to be heard on the subject for cost/benefit reasons.

**3.** Like the parties, the Court has considered the gross claims exclusive of deductions for fees and expenses. By regulation, Medicare reduces the amount it claims for "account procurement costs." Net of these, Medicare's reimbursement claim is $71,238.22. Secretary's Brief, at 3. *See* 42 C.F.R. § 411.37(a)(1).

cate for Mr. Denekas' BCBS coverage. That paragraph states:

> 1. If We pay or can reasonably expect to pay for services provided to You under this Contract, and You have a claim against or a right to recover damages from another person or organization (except insurers on policies in Your name), We expect You to transfer Your rights to Blue Cross and Blue Shield of Iowa so that We may recover the amount We paid. Upon Our request You will be required to provide to Blue Cross and Blue Shield of Iowa any assignment or any legal document or information necessary to secure those rights for Blue Cross and Blue Shield of Iowa. If You do not furnish Us with information necessary to determine whether another person or entity has legal responsibility for services furnished to You, We reserve the right to deny future claims.

BCBS' Response to Plaintiffs' Statement of Facts, Exhibit A at 8. In the Court's judgment, this provision does not expressly give BCBS a contractual right to recover medical expense payments from amounts recovered by the insured for nonmedical items. In view of the last sentence, a reasonable reading of the provision is that the right transferred by the insured is the right to recover for services furnished to the insured (medical expenses) from the person or entity having legal responsibility. In any event, however, a "Rider" to the benefits certificate appears to delete "the language in General Provisions, 'Our Right to Recover Payments,' subparagraph 1." *Id.*, Exhibit A at 12. In view of this, it does not appear BCBS has a contractual right of reimbursement from the estate's recovery for nonmedical items, and may be limited to common law subrogation.

Medicare, of course, does not propose any allocation. The settlement fund is enough to reimburse all of its payments and that is what it wants.

### III.

■ The primary and threshold issue in this case is whether Medicare's recovery may be reduced by apportionment of a part of the settlement proceeds to the children's loss of parental consortium claims free of Medicare's statutory right of reimbursement. Medicare's claim arises from the Medicare Secondary Payer ("MSP") provisions of Title XVIII of the Social Security Act, 42 U.S.C. § 1395y(b).[4] "As first enacted, Medicare was the primary payer for medical services supplied to a beneficiary, even when such services were covered by other insurance such as an employer group health plan or liability insurance." *Zinman v. Shalala,* 67 F.3d 841, 843 (9th Cir.1995). Congress enacted the MSP provisions "for the express purpose of lowering overall federal Medicare disbursements by requiring Medicare beneficiaries to exhaust all available private automobile insurance coverage before resorting to their Medicare coverage." *United States v. Rhode Island Insurers' Insolvency Fund,* 80 F.3d 616, 618 (1st Cir.1996) (citing H.R.Rep. No. 1167, 96th Cong., 2d Sess. 389, *reprinted in* 1980 U.S.C.C.A.N. 5526, 5752).

> Under the MSP provisions payment
>
> may not be made, except as provided in subparagraph (B), with respect to any item or service to the extent that—
>
> (i) payment has been made, or can reasonably be expected to be made, with respect to the item or service as required under paragraph (1), or
>
> (ii) payment has been made or can reasonably be expected to be made promptly ... under a workmen's compensation law or plan of the United States or a State or under an automobile or liability insurance policy or plan ... or under no fault insurance....

42 U.S.C. § 1395y(b)(2)(A). The "subparagraph (B)" referred to contemplates that Medicare will make benefits payments conditioned "on reimbursement to the appropriate Trust Fund ... when notice or other information is received that payment for such item or service has been or could be made under such subparagraph." *Id.* § 1395y(b)(2)(B)(i). The MSP system recog-

---

4. *See* Omnibus Budget Reconciliation Act of 1980, Pub.L. No. 96–499, § 953, 94 Stat. 2599, 2647 (1980).

nizes Medicare should pay for the beneficiary's care and seek reimbursement from the primary insurance carrier later. In 1984 Congress amended the MSP provisions to specifically add "the right of subrogation and the right of action by the United States to recover proceeds for conditional payments." [5] *United States v. Geier,* 816 F.Supp. 1332, 1336 (W.D.Wis.1993) (citing H.R.Rep. No. 432, 98th Cong., 2d Sess. 1803 (1984), *reprinted in* 1984 U.S.C.C.A.N. 697, 1417); *see* 42 U.S.C. § 1395y(b)(2)(B)(ii)–(iii).[6] Recovery of conditional payments may be waived, in whole or part, upon a determination "that the waiver is in the best interest of the program...." *Id.* § 1395y(b)(2)(B)(iv); *see also* 42 C.F.R. § 411.28 (waiver and compromise).[7]

In 1989, "Congress reorganized and consolidated the [MSP] provisions without changing the statute's wording significantly." *Geier,* 816 F.Supp. at 1337. Legislative history, however, reflects clear Congressional intent to allow Medicare to recover conditional payments "from the liability insurer or any entity paid by the liability insurer." *Id.* (citing H.R.Rep. No. 247, 101st Cong., 1st Sess. 1021 (1989), *reprinted in* 1989 U.S.C.C.A.N. 1906, 2492); *see* 42 C.F.R. § 411.24(g); 411.26. Thus, "[t]he intent of the [MSP] statute ... and the subsequently promulgated regulations was to reduce the cost of the Medicare program by requiring Medicare to pay 'secondary' to alternate sources." *United States v. Sosnowski,* 822 F.Supp. 570, 573 (W.D.Wis.1993).

In this case, the Medicare beneficiary's settlement was for less than the total damages, though more than the Medicare payment. The MSP provisions do "not address the issue of apportioned recovery of conditional Medicare payments, either by its language or by its structure." *Zinman,* 67 F.3d at 845. By regulation, Medicare takes the position the MSP provisions allow it to claim the full amount of its conditional payments when the beneficiary receives a discounted settlement. *Id.* at 843; *see* 42 C.F.R. §§ 411.24(c), .37(c). Medicare will relent, however, and exercise its right of reimbursement only against damages found for medical expenses where the medical and nonmedical damages items are determined by judgment or an arbitration. *Zinman v. Shalala,* 835 F.Supp. 1163, 1167 (N.D.Cal.1993), *aff'd,* 67 F.3d 841 (9th Cir.1995).[8] Here, of course, there has been no judgment or arbitration award.

But what happens when the settlement amount is for not only the Medicare beneficiary's claims, but also the consortium claims of others arising from the injury or death of the beneficiary? Medicare's position (supported by BCBS) is that its claims are superior to those of the beneficiary's estate and those claiming through the beneficiary. Medicare's Brief, at 18. Plaintiffs respond that the parental consortium claims, though required to be brought by the estate under Iowa law, are nonetheless the separate property of the surviving children, not the estate, and the MSP provisions do not allow Medi-

---

5. Deficit Reduction Act of 1984, Pub.L. No. 98–369, § 2344, 98 Stat. 1095 (1984).

6. Subsection (b)(2)(B)(ii) provides the United States may recover payment for any item or service by bringing

> ... an action against any entity which is required or responsible under this subsection to pay with respect to such item or service ... (and may, in accordance with paragraph (3)(A) collect double damages against that entity), or against any other entity ... that has received payment from that entity with respect to the item or service, and may join or intervene in any action related to the events that gave rise to the need for the item or service.

> In addition, the United States is subrogated to the extent of conditional payments made "to any right under this subsection of an individual or any other entity to payment with respect to such

item or service under a primary plan." 42 U.S.C. § 1395y(b)(2)(B)(iii).

7. Medicare has not waived recovery of payments here.

8. According to plaintiffs, Medicare's internal procedures state:

> If the court or other adjudicator of the merits specifically designates amounts that are for payment of pain and suffering or other amounts not related to medical services, Medicare will accept the Court's designation. Medicare does not seek recovery from portions of court awards that are designed as payment for losses other than medical services.

Medical Intermediary Manual § 3418.7 (Effective November 21, 1994); *see* plaintiffs' brief, at 4 & n. 1.

care to collect reimbursement from other claimants to the same insurance proceeds. To this, Medicare rejoins that to the extent Iowa law would force an apportionment to the consortium claims, it is preempted by federal law.

■ The Court agrees with plaintiffs on the consortium issue.[9] In Iowa, consortium claims based on the death of a parent or spouse may only be brought in the name of the estate of the decedent. Iowa Code § 613.15. A recovery in a wrongful death action which includes such claims "shall be apportioned by the court among the surviving spouse and children of the decedent in a manner as the court may deem equitable consistent with the loss of services and support sustained...." *Id.* § 633.336. The estate, however, is merely the nominal plaintiff for wrongful death consortium claims. As Judge Bennett of the Northern District has recently observed, Iowa courts have repeatedly held that consortium claims belong to the surviving spouse and children. *See Estate of Foster v. Shalala*, 926 F.Supp. 850, 863 (N.D.Iowa 1996) (collecting cases); *Fort Madison Bank & Trust Co. v. Farm Bureau Mut. Ins. Co.*, 543 N.W.2d 591, 595 (Iowa 1996); *Audubon–Exira Ready Mix, Inc. v. Illinois Cent. Gulf R.R.*, 335 N.W.2d 148, 152 (Iowa 1983).

■ The MSP provisions do not give Medicare the right to obtain reimbursement of conditional payments from the claims of other claimants who are not Medicare beneficiaries and whose claims are not for medical services to the beneficiary. The settlement fund here is for the settlement of claims belonging to the estate and claims belonging to the surviving children. The estate is the only Medicare beneficiary. "[T]he government stands exactly in [the Medicare beneficiary's] shoes when recovering from the available insurance funds." *Waters v. Farmers Texas County Mut. Ins. Co.*, 9 F.3d 397, 401 (5th Cir.1993). It does not have "a superior claim to community insurance funds beyond the beneficiary's own share of those

funds." *Id.; see Foster*, 926 F.Supp. at 864–65.

Medicare expresses concern that the required apportionment of insurance settlement payments short of a decision on the merits would allow beneficiaries and personal injury attorneys to reduce or eliminate Medicare reimbursements by weighting claims in favor of items of damage other than medical expenses. *See Zinman*, 67 F.3d at 846. This concern is understandable, but not controlling in the circumstance where the apportionment is between the beneficiary's claim and the claims of non-beneficiaries to the same settlement fund. As the *Waters* court suggested, in such cases some type of apportionment is unavoidable in order to determine the beneficiary's "share of the pie" from which Medicare may collect its reimbursement. 9 F.3d at 400. Administrative convenience and the avoidance of contrived apportionments do not allow the government to take settlement proceeds to which others are entitled.

In any event, Medicare has some arrows in its quiver to avoid unfair results. It has a right to intervene in the action against the tortfeasor and can bring or join any action against the responsible primary payer. 42 U.S.C. § 1395y(b)(2)(B)(ii); *see Rhode Island*, 80 F.3d at 618. It can also pursue third parties, including attorneys, who receive payments of any sums which should be reimbursed to Medicare, a fact that would cause any prudent personal injury attorney to involve Medicare before any disbursement of settlement proceeds is made. 42 U.S.C. § 1395y(b)(2)(B)(ii); *see Foster*, 926 F.Supp. at 865; *Sosnowski*, 822 F.Supp. at 572–73. Finally, Medicare's concern is simply not a factor in this case. There is no dispute about the reasonableness of the consortium claims in the circumstances here.

■ Medicare next argues requiring an apportionment of the wrongful death consortium claims is preempted by the MSP provisions because the Iowa statute "stands as an obstacle" to the Congressional objective of making Medicare payments secondary and

---

**9.** As a consequence of this conclusion, it is not necessary to address plaintiffs' Fifth Amendment due process and equal protection arguments.

reducing the costs of the Medicare program. *See Schneidewind v. ANR Pipeline Co.,* 485 U.S. 293, 300, 108 S.Ct. 1145, 1150–51, 99 L.Ed.2d 316 (1988); *Hankins v. Finnel,* 964 F.2d 853, 861, (8th Cir.), *cert. denied sub nom, Missouri v. Hankins,* 506 U.S. 1013, 113 S.Ct. 635, 121 L.Ed.2d 566 (1992). Medicare's Brief, at 15. Medicare contends the Iowa statute would position it as a primary payer. *See e.g., Rhode Island Insurers Insolvency Fund,* 80 F.3d at 622–23 (state insurance involving fund statute shifted primary responsibility onto Medicare); *Geier,* 816 F.Supp. at 1337 (state common law subrogation rights preempted by MSP); *Smith v. Travelers Indem. Co.,* 763 F.Supp. 554, 556–58 (M.D.Fla.1989) (MSP statute preempts state collateral source rule); *Varacalli v. State Farm Mut. Auto. Ins. Co.,* 763 F.Supp. 205, 209 (E.D.Mich.1990) (state no-fault insurance law preempted by MSP). The typical case where preemption has been found is one in which state law has the effect of shifting the primary burden to make medical expense payments from the liability insurer to Medicare as in the case of Florida's collateral source rule which deducted Medicare payments from automobile personal injury verdicts. *Smith,* 763 F.Supp. at 557. This case does not involve a shifting of responsibility between payers, but rather, competing claims to amounts paid by primary payers.

Preliminarily, the argument for preemption is weakened where, as here, the federal statute does not address the issue "either by its language or by its structure." *Zinman,* 67 F.3d at 845. The "no apportionment" policy is the product of agency construction of the MSP legislation. Even so, the Iowa statute does not make Medicare a primary payer of benefits and is not at all an obstacle to the objective sought to be served by the MSP statute. Iowa Code § 633.336 merely provides for determination of the estate's "share of the pie" against which Medicare can claim reimbursement, and conversely, of the surviving children's separate property interest in the wrongful death recovery. *See Waters,* 9 F.3d at 400. *Foster,* 926 F.Supp. at 864. It does not diminish or affect in any way Medicare's status as secondary payer of benefits to the beneficiary. Medicare still stands in the superior position to claim reimbursement from damages received by the beneficiary's estate.

## IV.

Plaintiffs contend that in addition to the parental consortium claims, the Court should apportion $125,000.00 to the estate's nonmedical claims and that a pro rata share of the settlement proceeds ($32,800.00) should be set aside to the estate for this item free of both Medicare's statutory right of reimbursement and the subrogation claim of BCBS. Medicare relies on its construction of the MSP provisions to allow full recovery of conditional payments when the beneficiary's settlement is less than the total damages. 42 C.F.R. § 411.24(c). Though there is no dispute about the reasonableness of the amount claimed for the estate's nonmedical damages in light of Mr. Denekas' injuries and his long and difficult hospital course, *see* Exhibits C, D to plaintiffs' Statement of Facts, the Court finds it must enforce Medicare's construction of the statute with respect to the Medicare beneficiary's "share of the pie" for the same reasons the Ninth Circuit did in *Zinman.* Because the MSP legislation does not address "the issue of apportioned recovery of conditional Medicare payments," the agency construction of the statute is to be upheld if it is "rational and consistent with the statute." *Zinman,* 67 F.3d at 845 (quoting *NLRB v. United Food & Commercial Workers Union,* 484 U.S. 112, 123, 108 S.Ct. 413, 420–21 (1987)); *see Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984). The Ninth Circuit reasoned allowing full reimbursement of conditional payments when a beneficiary receives a "discounted settlement" was rational and consistent with the statute's purpose. 67 F.3d at 845. This is because full recovery helps achieve the MSP legislation's purpose of reducing Medicare costs and is a "practical and economical way for Medicare to recover its conditional payments." *Id.* Plaintiffs do not take issue with this analysis. Rather, they argue only that Medicare is statutorily limited to reimbursement from sums that are recovered for

items and services conditionally paid by Medicare. Plaintiffs' Brief, at 13. *Zinman* rejected a similar argument. 67 F.3d at 844. This Court agrees the MSP statutory references to "'item or service' are intended to define the payments for which Medicare has a right to reimbursement," and do not compel the conclusion "Congress intended to limit the amount of recovery for a conditionally paid 'item or service' to a proportionate share of a discounted settlement." *Id.; see* 42 U.S.C. §§ 1395y(b)(2)(B)(i), (ii). *But cf. Smith,* 763 F.Supp. at 561–62 (exercise of Medicare reimbursement right limited to arbitration award for medical damages because "[r]eimbursement for any item or service is . . . tied to payment for such item or service").

### V.

In view of the foregoing, the Court concludes plaintiffs are entitled to an apportionment of the consortium claims from which neither Medicare nor BCBS may recover their medical payments. The remaining proceeds are subject first, to Medicare's statutory right to reimbursement as secondary payer, and second, to BCBS' subrogation rights. No amount should be apportioned to the estate's claims for nonmedical items. If, as Medicare contends, nonmedical damages should not be apportioned to reduce its reimbursement, then there should also be no apportionment of nonmedical damages in determining the amount of the consortium

claims. The medical expense claims of Medicare and BCBS total $276,437.25. The loss of consortium claims total $75,000.00. The total claims are therefore $351,437.25. The settlement fund of $125,000.00 is enough to pay only 35.57% of the total claims. Reducing each claim to this percentage, $26,676.00 of the settlement fund should be apportioned to the parental consortium claims and the remainder to the medical expense reimbursement/subrogation claims. Because Medicare's claim is primary, it may claim reimbursement to the extent of the remaining settlement proceeds.

### ORDER FOR JUDGMENT

By their respective motions for summary judgment, all parties request a declaration as to their rights with respect to recovery from the insurance settlement fund resulting from the resolution of tort and insurance claims in connection with the death of Mr. Raymond D. Denekas.[10] The motions are granted to the extent the Court will enter a declaratory judgment fixing the rights of the parties as set forth in the discussion above. Accordingly, the Clerk shall enter judgment substantially as follows:

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the parental consortium claims of plaintiffs James M. Denekas and Carol R.D. De Jong brought by the estate of Raymond D. Denekas are not

10. This Court has no jurisdiction to make the apportionment contemplated by Iowa Code § 633.336. The Court does have jurisdiction to determine the federal law issues governing the amount and priority of Medicare's reimbursement which in turn effectively determines the amount the other interested parties will realize from the settlement fund. Indeed, the Court would appear to have supplemental jurisdiction to determine the rights of other claimants to the fund. 28 U.S.C. § 1367(a). The estate of Mr. Denekas is still open, however, and subject to the continuing jurisdiction of the Iowa probate court. Presumably, the apportionment required by Section 633.336 will be made at some point.

Though no party has raised it, the Court has been concerned that a declaratory judgment in this case would improperly interfere with the exercise of the Iowa court's probate jurisdiction over the fund. *Cf. Madewell v. Downs,* 68 F.3d 1030, 1041 & n. 13 (8th Cir.1995); *United States v. One 1985 Cadillac Seville,* 866 F.2d 1142, 1145

(9th Cir.1989) (both discussing the rule against concurrent *in rem* proceedings). In the final analysis, however, this is not a controlling concern. The interested parties have been content to resolve the issues here and want closure. The apportionment of the consortium claims is only for the purpose of determining that portion of the settlement proceeds from which Medicare may obtain reimbursement. The existence and amount of the consortium claims is not disputed. Finally, the MSP provisions reflect a strong federal public policy interest in appropriately protecting Medicare's status as a secondary payer and right of reimbursement for conditional payments. The Iowa statute, on the other hand, is only concerned with an equitable apportionment of the consortium claims of the surviving children. Iowa Code § 633.336. In the circumstances of this case, therefore, it is appropriate for the Court to exercise its jurisdiction to grant a declaratory judgment.

subject to the claims of defendants for reimbursement of conditional Medicare payments or health/hospitalization insurance payments. The total amount of the consortium pro rata share of the settlement fund free of the interests of defendants is $26,676.00. With respect to the remaining settlement proceeds, Medicare as secondary payer has the primary interest between the defendants to the extent of its payments.

IT IS SO ORDERED.